IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10–cv–00334–PAB–KMT

JEFFREY ALLEN PHILLIPS,

      Plaintiff,

v.

SUSAN TIONA, Doctor, Kit Carson Correctional Center,
HOYT BRILL, Warden, Kit Carson Correctional Center,
JODI GRAY, Health Administrator, Kit Carson Correctional Center, and
CORRECTIONS CORPORATION OF AMERICA, owner of private prison KCCC,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      In this prisoner's civil rights action, Plaintiff alleges that Defendants have violated his rights under the Eighth Amendment as well as the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.  Plaintiff also alleges a violation of his Fifth Amendment rights and the "Confidentiality Act."  The matter comes before the court on "Defendant CCA's Motion to Dismiss" (Doc. No. 61), "Defendant Hoyt Brill's Motion to Dismiss" (Doc. No. 125), and Plaintiff's "Motion to Dismiss Claim (4) Four" (Doc. No. 168).

### STATEMENT OF THE CASE

      The following account is taken from Plaintiff's Second and Final Amended Complaint. (Doc. No. 41 [Compl.].)  Plaintiff is currently incarcerated at the Sterling Correctional Facility.

From October 2009 to December 2009 he was incarcerated at the Kit Carson Correctional Center (KCCC), and it is that three month period that forms the basis of all of his claims.  On August 25, 2009, Plaintiff severely broke his right ankle.  On August 26, 2009, Dr. David Mathews, an orthopaedic specialist, performed an Open-Reduction Internal Fixation (ORIF) to his right lateral malleolus[1] requiring seven screws and two plates.  Upon release from the hospital, Plaintiff was transferred to the El Paso County Jail where he was treated by the jail medical staff as well as Dr. Mathews.  According to Plaintiff, his post-operational treatment plan included instructions from Dr. Mathews that Plaintiff was not to walk or bear weight on his right ankle until the "4.5 cortical syndesmotic screw was removed" and should not be on ibuprofen "as it slows the healing process and strengthening process and because it effects [sic] [Plaintiff's] liver with Hep.C."  (*See, e.g.*, Compl. at 5, 7, 8.) On September 11, 2009, Dr. Mathews prescribed Tylenol for Plaintiff's post-operational surgery pain.  On October 1, 2009, Dr. Johnson at the El Paso County Jail prescribed Neurotin for the pain.

On October 8, 2009, Plaintiff was transferred to the KCCC.  He was in a knee-high cast and on crutches.  Plaintiff alleges that initially he was placed in a non-handicapped accessible cell and denied a wheelchair.  He claims that, without a wheelchair, when he received his food tray through the "bean slot,"[2] he was forced to slide the food tray across the "dirty, urine stained

---

[1] Plaintiff's complaint refers to the right lateral "malleor," but the court believes the correct term is "malleolus."  *See Blanke v. Alexander*, 152 F.3d 1224, 1227 (10th Cir. 1998) (involving the fracture of the medial malleolus on the right side of the right ankle).

[2] According to Plaintiff, a bean slot is "a trap door in regular safety door with only an opening of about 8" x 18"."  (Compl. at 14.)

concrete floor." (*Id.* at 5.)  On November 4, 2009, Plaintiff was moved to a handicapped cell.

According to Plaintiff, this cell had a desk to eat on "but as normal for any A.D.A. cell, no seat

or chair to sit on and write or eat on." (*Id.* at 23.)  Plaintiff was still denied a wheelchair and thus

claims he was still forced "to accept his food trays thru the trapdoor (bean slot) placing them

again on the dirty, urine stained concrete floor and shoving or sliding his food to his bed in order

to eat on his bed." (*Id.*)

Plaintiff also alleges that he was denied a working handicapped accessible shower.

Although he was initially "placed into shower #1, the only handicapped shower in the

segregation unit, [] no water came out of the shower head." (*Id.* at 17-18.)  He was then moved

to a non-handicapped shower and provided with a plastic patio chair to shower on until, on

November, 2, 2009, he suffered "a severe slip and fall accident." (*Id.* at 18.)  After this, he was

"forced to shower in a non-handicapped shower, with no plastic chair or handrails for assistance,

and in by doing so forced this plaintiff to change his underwear and clothes on a urinated, spit

on, snotted on, with masterbation [sic] excretements [sic] on the dirty infested floor, which was

just previously used, and not cleaned or disinfected before this plaintiff Phillips got into the same

shower, just used by 10-15 inmates before me." (*Id.* at 19-20.)  Plaintiff asserts that "a simple

wheelchair would have solved [the food tray] problem and the shower problem." (*Id.* at 23.)

Plaintiff also alleges that he was denied the pain medication that had been prescribed,

was given ibuprofen contrary to Dr. Mathews' orders, and was given a walker in place of his

crutches, forcing him to bear weight and walk on his right ankle, also contrary to Dr. Mathews'

orders.  Moreover, he claims that Defendants refused to follow Dr. Mathews' post-operational

surgery plan to have the screw removed causing him to walk with a permanent limp.

Finally, Plaintiff alleges that on May 21, 2010, he was asked to sign a medical release to

Defendant Gray, which he refused to do.  He claims this was in order to obtain his medical

records for court proceedings and without waiting for discovery.

Plaintiff brings claims against Defendants for deliberate indifference to a serious medical

need in violation of the Eighth Amendment's prohibition on cruel and unusual punishment, for

violations of the ADA and Section 504 of the Rehabilitation Act for not providing him with a

wheelchair and handicapped accessible shower, and for violating the "Confidentiality Act"[3] and

his Fifth Amendment rights against self-incrimination by forcing him to sign a medical release in

order to obtain his medical records for purposes of court proceedings.

Plaintiff seeks $65,000 in compensatory damages, legal fees, including all copies,

postage and filing fees, punitive damages in the amount of $7,500, and a "Declaratory

Judgement [sic]: to follow all prescribed post-operational medical treatment plans by surgeons."

(*Id.* at 29.)  He also ask for nominal damages and "non economic loss's [sic] or injury" as the

court deems necessary.  (*Id.*)

## PROCEDURAL HISTORY

Plaintiff filed his Second and Final Amended Complaint on August 18, 2010 bringing

claims against Defendants Tiona, Brill, Gray and the Corrections Corporation of America

---

[3] The "Confidentiality Act" Plaintiff cites—42 C.F.R. Part 2—pertains to the confidentiality of
alcohol and drug abuse patient records.

(CCA).  (Doc. No. 41.)  Defendants Tiona and Gray answered on November 3, 2010.  (Doc. No.

68.)  Defendant CCA filed its Motion to Dismiss on October 14, 2010 (Doc. No. 61), to which

Plaintiff filed a response on November 12, 2010 (Doc. No. 79), and CCA a reply on November

24, 2010 (Doc. No. 94).  Defendant Brill filed his Motion to Dismiss on January 4, 2011(Doc.

No. 125), to which Plaintiff filed a response on February 4, 2011 (Doc. No. 161), and Brill a

reply on February 16, 2011 (Doc. No. 170).  On February 11, 2011, Plaintiff filed a motion to

dismiss claim four.  Defendants have not responded to Plaintiff's motion.  The three motions to

dismiss are ripe for review and recommendation.

## STANDARD OF REVIEW

**A.**     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see*

*also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not "supply

additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

**B.**      ***Failure to State a Claim Upon Which Relief Can be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies the allegations in the complaint that are not entitled to the assumption of truth, that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court considers the factual allegations "to determine if

6

they plausibly suggest an entitlement to relief." *Id.* at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citations omitted).

## DEFENDANT CCA'S MOTION TO DISMISS

Defendant CCA moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss certain of Plaintiff's claims[4] for failure to state a claim.  The motion is based on "Plaintiff's failure to allege that a policy, custom, or practice of CCA was the moving force behind any alleged

---

[4] In his Response, Plaintiff claims that CCA "does not clarify explicitly whether they are moving to dismiss Plaintiff's Second and Final Complaint in its entirety against all defendants or just the defs C.C.A., to all 4 claims."  (Doc. No. 79 at 2-3.)   Plaintiff previously sought clarification on this point.  (Doc. No. 72.)  The court clarified for Plaintiff that CCA seeks to dismiss the claims asserted by Plaintiff against CCA only.  (Doc. No. 76.)  However the court mistakenly read CCA's motion to dismiss as addressing all of Plaintiff's claims.  Upon further review, the court determines that CCA has not addressed Plaintiff's claim for a violation of Section 504 of the Rehabilitation Act.

conduct that violated Plaintiff's rights and Plaintiff's failure to allege that the services, programs

and/or activities were not made available to him by CCA to support a Title II claim under the

Americans With Disabilities Act."  (Doc. No. 94 at 1.)

**1.      *Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983***

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

The Supreme Court has held that a municipality may not be held liable under § 1983

unless "action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978).  "[T]he

municipality must have had an official municipal policy of some nature that was the direct cause

or moving force behind the constitutional violations."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194,

1215 (10th Cir. 2003) (citations omitted).  In order to establish municipal liability, "a plaintiff

must show (1) the existence of a municipal custom or policy and (2) a direct causal link between

the custom or policy and the violation alleged."  *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir.

1996).  The Tenth Circuit has held that traditional municipal liability principles apply to claims

brought pursuant to § 1983 against private corporations.[5]  *Dubbs*, 336 F.3d at 1216 (citing cases).

---

[5] There is no dispute that CCA is a private corporation for purposes of § 1983 liability.  Plaintiff's
complaint refers to CCA as a "private profit fortune corporation."  (Compl. at 2A.)

Therefore, "a private actor cannot be held liable *solely* because it employs a tortfeasor-or, in other words, . . . cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* (citing *Monell*, 436 U.S. at 691 (emphasis in original)).

CCA argues that Plaintiff does not allege that CCA maintains any custom or policy relevant to any of his claims.  The court agrees.  In naming the parties, Plaintiff states "Corrections Corporation of America is brought in on 2nd and Final Amended Complaint as a culpable defendant, and as a respondet [sic] superior for all (4) four claims . . . ."  (Compl. at 3.) In making allegations against Defendant Brill for violations of the ADA and Section 504 of the Rehabilitation Act, Plaintiff states that "Defendant Hoyt Brill can be held liable . . . being in charge of all inmates under his control by the Colo Dept. of Corrections, thru contract with the owner's [sic] of Correctional Corporation of America . . . to keep them safe and provide necessary ADA showers, with fold down bench's [sic] and handrails to assist this plaintiff while showering, even though this is a private, for hire, for profit corporation."  (*Id.* at 21.)  Plaintiff specifically "add's [sic] C.C.A. corp. [sic] to his list of Defendants, along with Def. Hoyt Brill Warden for his A.D.A. Title II and III of A.D.A. U.S.C. 12101-et seq."  (*Id.*)  Finally, Plaintiff states, "Corrections Corporation of America is to be included in all (4) four claims in Plaintiffs Phillips [sic] 2nd and Final Amended Complaint as the Def. Warden Hoyt Brill is no longer at KCCC and C.C.A. is responsible for all actions (or inactions) in the private prison and violating this plaintiffs [sic] 8th Amend. right to be free from cruel and unusual punishment."  (*Id.* at 24.)

Although Plaintiff intends to bring CCA in on every claim in the complaint, he still must plead facts that suggest CCA might be liable for the alleged violation.  *Iqbal*, 129 S. Ct. at 1949.

CCA cannot be held liable under § 1983 unless it maintained a custom or policy pursuant to which Plaintiff's constitutional rights were violated.  Nowhere in the complaint does Plaintiff allege any CCA custom or policy that directly caused or was a "moving force" behind the alleged constitutional violations.  He does state that CCA is "respondet [sic] superior" for all four claims and "is responsible for all actions (or inactions) in the private prison" (Compl. at 3, 24.)  However, a private corporation cannot be held liable under § 1983 on a *respondeat superior* theory.  *Dubbs*, 336 F.3d at 1216.

Plaintiff's arguments in response are to no avail.  He argues that the Supreme Court has held that a private corporation is treated as a "person" for purposes of 42 U.S.C. § 1983.  (Doc. No. 79 at 4-5.)  In *Monell*, the Supreme Court held that local governments are "persons" for purposes of liability under § 1983.  436 U.S. at 690.  However, whether a private corporation is subject to suit, is a different question than whether a plaintiff has pled sufficient facts to state a claim against it.  CCA has moved to dismiss for failure to state a claim.  Therefore Plaintiff's argument regarding "person" is inapposite.

In his response, Plaintiff also asserts that he has alleged a policy or custom with regard to CCA.  Plaintiff argues that he "clearly states [in his complaint] that the Defendants C.C.A. [sic] violated Plaintiff [sic] United States Constitutional Rights by violating his Americans with Disability Act, under Title 2 (two) and Title 3 (three) pursuant to the 42 U.S.C. §§ 12101-12213 and his Eigth [sic] Amandant [sic] Constitutional Right to be free from Cruel and Unusual Punishment and causing pain and suffering."  (Doc. No. 79 at 10-11.)  He also argues that "C.C.A. violated the municipal custom and policy of A.D.A. Title 2 and 3 . . . " and that "by

violating the A.D.A. policy, caused this plaintiff to be subjected to Cruel and Unusual

Punishment with pain and suffering." (*Id.* at 11-12.)

Plaintiff misunderstands the legal standard.  To state a claim against CCA for a violation

of the Eighth Amendment, Plaintiff must allege that an official custom or policy *of CCA* directly

caused or was a "moving force" behind his injury.  Whether CCA violated the ADA is a separate

claim, which is addressed below.  Plaintiff does not allege that any violations of his rights

occurred pursuant to a CCA custom or policy.  Accordingly, the court recommends that this

claim against CCA be dismissed.

**2.      *Americans with Disabilities Act***

The purpose of the ADA is "to provide a clear and comprehensive national mandate for

the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1).

To that end, the Act prohibits discrimination against individuals with disabilities in the areas of

employment (Title I), public services, programs and activities (Title II), and public

accommodations (Title III).  *Tennessee v. Lane*, 541 U.S.. 509, 516 (2004).  Plaintiff asserts

violations of Titles II and III of the ADA.

Title II provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §

12132.  This provision applies to discrimination against inmates in state prisons.  *Penn. Dep't of

Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) ("State prisons fall squarely within the statutory

definition of 'public entity,' which includes 'any department, agency, special purpose district, or

other instrumentality of a State or States or local government.").  Similarly, Title III provides

that "no individual shall be discriminated against on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation."  42 U.S.C. § 12182(a).

"To state a claim under Title II, the plaintiff must allege that (1) he is a qualified

individual with a disability, (2) who was excluded from participation in or denied the benefits of

a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or

discrimination was by reason of a disability."  *Robertson v. Las Animas County Sheriff's Dep't*,

500 F.3d 1185, 1193 (10th Cir. 2007).  A plaintiff alleging discrimination under Title III must

show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private

entity that owns, leases, or operates a place of public accommodation, and (3) that the defendant

failed to make reasonable modifications that would accommodate the plaintiff's disability,

without fundamentally altering the nature of the public accommodation.  *See Doe v. Oklahoma

City University*, No. 10-6020, 2010 WL 5395011, at *2 (10th Cir. Nov. 2, 2010).

The entirety of CCA's argument in support of dismissing this claim is as follows:

As with Plaintiff's § 1983 claims discussed above, Plaintiff does not allege that
the services, programs and/or activities he needed were not available at KCCC.
Rather, Plaintiff asserts that individuals denied him access to such services,
programs and/or activities because certain medical professionals determined he
was not handicapped based on his medical condition at that time and thus did not
provide him with the services, programs and/or activities he needed.

(Doc. No. 61 at 5.)

CCA does not contest that Plaintiff is a qualified individual with a disability.[6]  The court finds that plaintiff has sufficiently pled facts in support of this element.

A disability within the meaning of the ADA requires proof that an individual has an impairment that limits one or more of his major life activities, has a record of such an impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(2).  A "disability" under the ADA requires more than a diagnosis of mental or physical impairment.  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).  Thus, a plaintiff must ultimately prove either an actual or perceived substantial limitation in a major life activity to prevail on a claim under the ADA.

Plaintiff has alleged that he "was considered or should have been considered handicapped with only (1) one leg to stand on, relying on crutches for assistance in walking on (1) one leg." (Compl. at 17.)  Plaintiff also asserts that being "a person who is on crutches and in a knee high cast, with post-operational treatment plans to not walk or bearer [sic] weight on R ankle until 4.5 cortical syndesmotic screw is removed, should have been considered enough."  (*Id.* at 20-21.)

Though Plaintiff ultimately must prove that he is substantially limited in a recognized major life activity to prevail on his ADA claims, at the pleading stage, Plaintiff's allegations regarding disability are sufficient.  *See Equal Emp't Opportunity Comm'n v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ("[S]o long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically

---

[6] Whether medical professionals incorrectly determined that Plaintiff was not handicapped is not before the court at this stage in the proceedings.

identified in the pleading."); *cf. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) (holding

that a plaintiff need not plead a *prima facie* case of employment discrimination to adequately

allege a claim under Title VII of Civil Rights Act of 1964), *abrogated in part on other grounds*

*by Twombly*, 550 U.S. 544.

        The thrust of CCA's argument goes to the second element of a Title II claim—whether

Plaintiff was excluded from participation in or denied the benefits of a public entity's services,

programs, or activities.  Here, the court disagrees with CCA's reading of the Complaint.

Construing Plaintiff's complaint liberally, he makes several allegations regarding the denial of

services, programs or activities.  He asserts that upon his arrival at KCCC, he was placed into

segregation cell 119, a non-handicapped cell, he was denied a working handicapped shower, and

was denied a wheelchair "to get around in his cell, go back and forth to medical . . . , go to take

showers or for receiving his hot and cold tray food [sic] at the security door . . . ."  (Compl. at 6,

17, 19, 22.)  Plaintiff was later transferred to a handicap cell, which, because it was contemplated

for use with a wheelchair, did not have a chair.  Nevertheless, Plaintiff was still denied a

wheelchair.  With regard to the shower, Plaintiff asserts that he was initially "placed into shower

#1, the only handicapped shower in the segregation unit, but no water came out of the shower

head."  (*Id.* at 17-18.)  He was then "moved into a non-handicapped shower and given a blue

plastic patio chair to shower on, standing on (1) one leg, relying on plaintiffs [sic] crutches for

support, and having (3) three plastic trash bags covering knee high cast, non walking cast, to

protect from water."  (*Id.*)

At least with regard to a handicap accessible shower, these allegations suggest more than the denial of benefits based on a medical determination.  "The ADA requires more than physical access to public entities: it requires public entities to provide *'meaningful* access' to their programs and services." *Robertson*, 500 F.3d at 1195 (citations omitted).  42 U.S.C. § 12134(a) requires the Department of Justice to promulgate regulations to implement the nondiscrimination mandate of Title II.  *Robertson*, 500 F.3d at 1195; *see* 42 U.S.C. § 12134(a).  The regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability."  28 C.F.R. § 35.130(b)(7).  They also require a public entity to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible and usable by persons with disabilities by the Act or this part."  28 C.F.R. § 35.133(a).

Contrary to CCA's reading of the complaint Plaintiff has not acknowledged that the facility has all the necessary equipment, services and procedures (*see* Doc. No. 61 at 4).  In particular, Plaintiff clearly alleges that he was denied a handicap accessible shower because the only handicap accessible shower in the segregation unit where he was housed did not work.  The court finds that Plaintiff has pled sufficient facts to allege that CCA did not provide meaningful access to its services (Title II) and failed to make reasonable modifications to accommodate

Plaintiff's alleged disability (Title III).[7]  Therefore, the court recommends that CCA's motion to dismiss be denied as to Plaintiff's ADA claim.

**3.    Section 504 of the Rehabilitation Act**

In addition to the ADA, Plaintiff has alleged that Defendants violated Section 504 of the Rehabilitation Act.  CCA does not specifically seek dismissal of Plaintiff's Section 504 claim in its motion to dismiss.  However, for the reasons described below with regard to Defendant Brill's motion to dismiss, the court finds that Plaintiff has failed to state a Section 504 claim. Moreover, the court finds that it would be futile to provide Plaintiff an opportunity to amend his complaint and therefore recommends that Plaintiff's Section 504 claim be dismissed in its entirety against all Defendants.  *See McKinney v. State of Okl., Dept. of Human Serv.*, 925 F.2d 363, 365 (10th Cir. 1991 (holding that a *sua sponte* dismissal is appropriate only where it is patently obvious that the plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile).

**4.    Fifth Amendment/Confidentiality Act**

Finally, CCA argues that Plaintiff's allegation that he was forced to sign a medical release so that Defendants could obtain his medical records without his proper consent is not the type of self-incrimination contemplated by the Fifth Amendment.  (Doc. No. 61 at 5-6.)  Plaintiff

---

[7] The court declines to determine whether CCA is a public entity susceptible to suit under Title II, or whether a state prison is a place of public accommodation under Title III as CCA has not raised these issues and the court has no argument before it on this issues.

has moved to dismiss this claim.  (Doc. No. 168.)  As described below, the court recommends

that Plaintiff's motion to dismiss be granted.

## DEFENDANT BRILL'S MOTION TO DISMISS

Defendant Brill moves to dismiss certain of Plaintiff's claims pursuant to Fed. R. Civ. P.

12(b)(6).  Defendant Brill reads the complaint as alleging Eighth Amendment, ADA and Section

504 claims against him.  He argues that all three claims should be dismissed because Plaintiff has

made only conclusory allegations that Defendant Brill is responsible for the actions of his co-

workers, because KCCC does not receive the required federal funding to be subject to section

504 of the Rehabilitation Act and because Plaintiff's ADA claim is merely a challenge to

Plaintiff's medical care and not a lack of access to programs or other benefits actionable under

the ADA.  (Doc. No. 125 at 1-2.)

### 1.      *Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983*

The Eighth Amendment's ban on cruel and unusual punishment is violated if a

defendant's "deliberate indifference to serious medical needs of prisoners constitutes the

unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)

(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A claim for deliberate indifference has

both an objective and a subjective component.  To satisfy the objective component, a prisoner

must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v.

Brennan*, 511 U.S. 825, 834 (1994).  A medical need is sufficiently serious "if it is one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d

1220, 1224 (10th Cir. 1999) (citation omitted).  To satisfy the subjective component, a prisoner

must demonstrate that prison officials acted with a "sufficiently culpable state of mind."

*Farmer*, 511 U.S. at 834.  The official's must "know of and disregard an excessive risk to inmate

health and safety." *Id.* at 837.  That is, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.*

  Although an Eighth Amendment claim regarding deliberate indifference to a serious

medical need often involves an official's failure to treat a prisoner's serious medical condition

properly, it may also arise when a prison official acts with deliberate indifference in preventing a

prisoner from receiving treatment or denying him access to medical personnel capable of

evaluating the need for treatment.  *See Sealock v. Colorado*, 218 F.3d 1205, 12011 (10th Cir.

2000).  However, "[e]xcept in the unusual case where it would be evident to a lay person that a

prisoner is receiving inadequate or inappropriate treatment, [non-medical] prison officials may

reasonably rely on the judgment of medical professionals." *Bond v. Aguinaldo*, 228 F. Supp. 2d

918, 920 (N.D. Ill. 2002); *see also Weatherford ex rel. Thompson v. Taylor*, No. 09-7018, 2009

WL, at *3 (10th Cir. Oct. 5, 2009) (unpublished) (citing cases); *Hayes v. Snyder*, 546 F.3d 516,

526-27 (7th Cir. 2008).

  Personal participation is an essential allegation in a § 1983 civil rights action.  *Bennett v.

Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal liability, a plaintiff must

show that the official caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation

and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Morever, it is well established that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 29 S. Ct. at 1948.

Defendant Brill argues that Plaintiff has not alleged any personal participation by Defendant Brill in any determination regarding the treatment of Plaintiff's right ankle. (Doc. No. 125 at 5.) According to Defendant Brill, "the single factual allegation relating to Warden Brill" consists of Plaintiff's claim that his father sent eight grievances requesting that Defendant Brill intervene in Dr. Tiona's treatment decisions to have the screws removed form Plaintiff's right ankle. (*Id.*) Defendant Brill asserts that the mere receipt of medical request is insufficient to establish personal participation on his part. (*Id.*) Finally, Defendant Brill argues that Plaintiff's allegations are insufficient to establish that he knew of a substantial risk to plaintiff and disregarded it by failing to take reasonable measures to abate it, because, where KCCC medical professionals had already evaluated Plaintiff's medical needs, Defendant Brill, as a non-medical professional cannot be considered deliberately indifferent for failing to override those opinions. (*Id.* at 5-6.)

In his complaint, Plaintiff alleges that during his time at KCCC he[8] submitted more than eight medical requests to Defendant Brill; seven of them were answered by Defendant Gray. (Compl. at 11-12.)  On October 20, 2009, he "submitted a medical request to Dr. Tiona and Warden Brill, providing Dr. Mathews office phone (719) 632-7669, asking Dr. Tiona/Warden Brill to consult with performing surgeon Dr. David S. Mathews, for screw removal as prescribed by a Dr." (*Id.* at 9-10.)  Plaintiff alleges,

> On 10/29/09, the only request answered by Def. Brill, from the plaintiff asking for 'screw removal' and 'how long do I have to wait for my surgery?' and 'Please help before I end up with a limp?' Def. Brill answered with 'Dr. Tiona is evaluating your case.  You will hear soon.' signed by Def on 10/30/09.

(*Id.* at 12.)  He further alleges that Defendant Brill had full knowledge of Plaintiff's serious medical needs "by answering numerous medical request from Phillips and specifaly [sic] on 10/30/09, (22 days after plaintiff Phillips arrived) stating: 'Dr. Tiona is evaluating your case. You will hear soon.'  Signed by W.B. on 10/30/09." (*Id.* at 15.)  Plaintiff asserts that Defendant Brill "had the power, as his duties both in his official capacity as Warden, and his individual capacity, to make sure plaintiff Phillips serious medical needs and prescribed post-operational plans by an orthopedic surgeon to 'remove 4.5 cortical syndesmotic screw' was removed, but chose to be deliberately indifferent to plaintiff's serious medical needs . . . ." (*Id.* at 16.)

There is no dispute that Plaintiff has sufficiently pled the objective component of a deliberate indifference claim.  He stated that he arrived at KCCC in a knee high cast and on

---

[8] The court notes that the complaint alleges that Plaintiff, not his father, submitted the medical requests.

crutches. Clearly, he had already received treatment from a physician and even a lay person could tell he would need further treatment. Defendant Brill does not argue that his medical need was not sufficiently serious. However, the court finds that Plaintiff has not pled facts to satisfy the subjective component of this Eighth Amendment claim. His allegations do not suggest that Defendant Brill knew of and disregarded an excessive risk to inmate health and safety. *Farmer*, 511 U.S. at 837. In particular, Plaintiff has not pled any facts to suggest that Defendant Brill was not reasonable in relying on the judgment of KCCC's medical staff. Plaintiff's allegations demonstrate that Defendant Brill knew of Plaintiff's medical requests for surgery to remove screws from his ankle, but also knew that Dr. Tiona was in the process of evaluating them; they do not demonstrate that Defendant Brill knew or had any reason to believe that Plaintiff was receiving inappropriate or inadequate medical care. Plaintiff's expressed desire for prompt surgery, does not, in and of itself, suggest that any delay in surgery amounts to inadequate or inappropriate medical care, of which Defendant Brill was aware. *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977) (noting that a difference of medical opinion does not, itself, indicate incorrect treatment and that non-medical defendants were entitled to rely on the diagnosis they received from state medical authorities). Accordingly, the court finds that Plaintiff has not pled facts suggesting deliberate indifference on the part of Defendant Brill and, therefore, recommends that Plaintiff's Eighth Amendment claim against Defendant Brill be dismissed.

**2.**     ***Americans with Disabilities Act***

With regard to Plaintiff's ADA claim, Defendant Brill contends that Plaintiff's allegations deal with inadequate medical care for which the ADA does not create a remedy.

(Doc. No. 125 at 7.)  Defendant Brill also argues that Plaintiff fails to allege that Defendant Brill personally participated in denying him services or programs enjoyed by other prisoners.  (*Id.*)

Like CCA, Defendant Brill misreads the allegations of Plaintiff's complaint with regard to the ADA.  In particular, Plaintiff's allegations regarding a non-working handicap shower suggest a deficiency in the facilities at KCCC, separate and apart from the adequacy of Plaintiff's medical care, in violation of the ADA.  In his reply, Defendant Brill also suggests that Plaintiff was not provided the handicapped accommodations that were available at KCCC because Plaintiff had been deemed not handicapped by medical professionals.  (Doc. 170 at 5.)  This ignores allegations in Plaintiff's complaint that he was handicapped, or should have been considered handicapped (Compl. at 17, 20-21), that he was initially placed in a handicapped shower at KCCC, but it did not work (*id.* at 17-18), and also that, although he was originally placed in a non-handicapped cell, he was later moved to a handicapped cell (*id.* at 23).  It appears that there may be a factual dispute as to whether Plaintiff was deemed handicapped or should have been deemed so, but this is not the appropriate point in the proceedings to consider that question.  As discussed above in connection with CCA's motion to dismiss, for purposes of a motion to dismiss, Plaintiff has sufficiently alleged that he was disabled within the meaning of the ADA.

Defendant Brill's argument regarding personal participation also fails.  While personal participation is a pleading requirement of § 1983 claims, it does not appear necessary to state a claim under the ADA.  *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) (in case also involving § 1983 claims, applying doctrine of *respondeat superior* to claims brought

under the ADA); *Arguello v. Conoco, Inc.*, 207 F.3d 803, 809 n.9 (5th Cir. 2000) (finding no

reason that vicarious liability standards from 42 U.S.C. 1981 are not also applicable to Title II of

the ADA).  Plaintiff specifically alleges that Defendant Brill "took full knowledge of plaintiff

Phillips [sic] serious medical conditions, and his serious need for a handicap shower, with a fold

bench and hand rails as provided by in [sic] Title II of the A.D.A. and section 504 of the

Rehabilitation Act, and Title III" (Compl. at 17) and that "as Warden of KCCC, Defendant Hoyt

Brill . . ., being in charge of all inmates under his control by the Colo. Dept. of Corrections, thru

contract with the owner's [sic] of Correctional Corporation of America . . ., to keep them safe

and provide necessary ADA showers, with fold down bench's [sic] and handrails to assist this

plaintiff while showering . . . ." (*id.* at 21).  Accordingly, the court finds that Plaintiff's

allegations are sufficient to state a claim against Defendant Brill under the ADA and therefore

recommends that Defendant Brill's motion to dismiss be denied as to this claim.

### 3.      *Section 504 of the Rehabilitation Act*

Section 504 provides,

> No otherwise qualified individual with a disability in the United States . . . shall,
> solely by reason of her or disability, be excluded from the participation in, be
> denied the benefits of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  To state a claim for discrimination under the Rehabilitation Act, a plaintiff

must allege that 1) he is disabled under the act; 2) he is "otherwise qualified" to participate in the

program; 3) the program receives federal assistance; and 4) the program has discriminated

against the plaintiff.  *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).  The

standards for discrimination under the Rehabilitation Act are the same as those for

discrimination under the ADA. *Jarvis v. Potter*, 500 F.3d 1113, 1121 (10th Cir. 2007).

Defendant Brill argues that Plaintiff has not stated a claim against Defendant Brill under

Section 504 because he has not identified a single program from which Defendant Brill has

excluded plaintiff, nor a single program at KCCC that receives federal assistance. In fact,

Defendant Brill claims that the private owner and operator of KCCC receives no federal funding

to run the facility or its programs.

Plaintiff has not made any allegations regarding federal funding in his complaint and he

did not address Defendant Brill's arguments on this point in his response. (*See* Doc. No. 161.)

Because a program must receive federal assistance to be covered by Section 504 of the

Rehabilitation Act, the court finds that Plaintiff has failed to state a Section 504 claim.

Moreover, because Plaintiff has not made any argument that he could amend his complaint to

correct this deficiency, the court finds that allowing amendment would be futile and, therefore,

recommends that Plaintiff's Section 504 claim be dismissed in its entirety against all Defendants.

*See McKinney*, 925 F.2d at 365 (holding that a *sua sponte* dismissal is appropriate when

allowing an opportunity to amend would be futile).

## PLAINTIFF'S MOTION TO DISMISS

On February 11, 2011, Plaintiff filed a motion to dismiss with prejudice his claim four

regarding his Fifth Amendment rights against self-incrimination and his rights under the

"Confidentiality Act." (Doc. No. 168.) Plaintiff states that he agrees with defense counsel in

CCA's Motion to Dismiss "that their [sic] is 'no' room for claim (4) four, under the 5th

Amendment . . . in this 42 U.S.C. § 1983 civil suit."  (*Id.* at 1-2.) Plaintiff also notes that "42

CFR (part 2) is related to the confidentiality of Drug and Alcohol Records."  (*Id.* at 3.)

Therefore, Plaintiff requests that claim four be dismissed.

Defendant CCA already moved to dismiss this claim in its motion to dismiss.  The

remaining Defendants did not file a response to Plaintiff's motion or otherwise object to

dismissal of the claim.  Accordingly, the court recommends that Plaintiff's motion to dismiss be

granted.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that

1)      "Defendant CCA's Motion to Dismiss" (Doc. No. 61) be GRANTED IN PART

and DENIED IN PART.  The court recommends that it be GRANTED with

respect to Plaintiff's Eighth Amendment claim against CCA and DENIED with

respect to Plaintiff's ADA claim against CCA;

2)       "Defendant Hoyt Brill's Motion to Dismiss" (Doc. No. 125) be GRANTED IN

PART and DENIED IN PART.  The court recommends that it be GRANTED

with respect to Plaintiff's Eighth Amendment and Section 504 claims against

Defendant Brill and DENIED with respect to Plaintiff's ADA claim against

Defendant Brill;

3)      Plaintiff's Section 504 claim be dismissed in its entirety against all four

defendants; and

4)      Plaintiff's "Motion to Dismiss Claim (4) Four" (Doc. No. 168) be GRANTED.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 11th day of March, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge