IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-00334-PAB-KMT

JEFFREY ALLEN PHILLIPS,

    Plaintiff,

v.

SUSAN TIONA, Doctor, Kit Carson Correctional Center,
HOYT BRILL, Warden, Kit Carson Correctional Center,
JODI GRAY, Health Administrator, Kit Carson Correctional Center, and
CORRECTIONS CORPORATION OF AMERICA, Owner of Private Prison KCCC,

    Defendants.

---

## ORDER

---

This matter is before the Court on the Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 306]. The magistrate judge recommends that the Court grant defendants' motion for summary judgment [Docket No. 255] and deny plaintiff's motion to strike [Docket No. 290]. Plaintiff filed timely objections [Docket No. 312] to the Recommendation. *See* Docket No. 310 (granting plaintiff's motion for extension of time to file objections). When a party files timely objections to a magistrate judge's recommendation on a dispositive motion, a district court reviews the objected-to portion of the recommendation de novo. *See* Fed. R. Civ. P. 72.[1] Because the plaintiff is proceeding pro se, the Court liberally construes his

---

[1]The Court has not identified a specific objection by plaintiff to the magistrate judge's recommendation that plaintiff's motion to strike [Docket No. 290] be denied. In the absence of an objection, the Court has satisfied itself that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. Consequently, the Court will accept that aspect of the Recommendation.

pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), but may not act as his advocate.  *See Hall*, 935 F.2d at 1110.  Because the Recommendation provides a thorough recitation of the factual and procedural background of this case, the Court will turn directly to the claims at issue.

Plaintiff's remaining claims in this action allege that all defendants violated Titles II and III of the Americans With Disabilities Act ("ADA"), *see* 42 U.S.C. §§ 12131-12165, 12181-12189, and that defendants Susan Tiona and Jodi Gray violated his Eighth Amendment rights.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006).  Courts in this district have consistently concluded, as the Court does here, that Title II of the ADA does not impose individual liability.  *A.B. ex rel. B.S. v. Adams-Arapahoe 28J School Dist.*, --- F. Supp. 2d ----, 2011 WL 5910191, at *20 (D. Colo. Nov. 28, 2011); *Grider v. City and County of Denver*, No. 10-cv-00722-MSK-MJW, 2011 WL 721279, at *6 (D. Colo. Feb. 23, 2011); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1240-41 (D. Colo. 1999).  Therefore, plaintiff's Title II claim may not proceed against defendants Brill, Tiona, and Gray individually.

As for plaintiff's Title II claim against defendant Corrections Corporation of America ("CCA"), "Title II . . . addresses discrimination by governmental entities in the operation of public services, programs, and activities, including transportation; and Title

III addresses discrimination in public accommodations and services operated by private entities." *Buchanan v. Maine*, 469 F.3d 158, 170 (1st Cir. 2006); *see Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010) ("Only public entities are liable for violations of Title II of the ADA."). For purposes of Title II, the "term 'public entity' means – (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). The Recommendation stated that "it does not appear that either the Supreme Court, the Tenth Circuit, or the District of Colorado have previously decided whether a private corporation that manages correctional facilities for a state government, like CCA, is considered a public entity for purposes of Title II." Docket No. 306 at 14. The Recommendation then analyzed relevant authority and concluded that CCA was not a public entity subject to the ADA. *See* Docket No. 306 at 14-19. The Court agrees with the Recommendation on this point.

As an initial matter, it is clear that CCA is neither a state or local government or a covered commuter authority. Nor is there any basis to conclude that CCA, a private corporation, is a "department, agency, special purpose district . . . of a State or States or local government." 42 U.S.C. § 12131(1)(B). The question then is whether, for purposes of Title II, CCA could be considered an "instrumentality" of Colorado in light of its provision of prison services for the state. In *Edison*, the Eleventh Circuit addressed the question of whether a "private prison management corporation operating a Florida state prison" was a "public entity" subject to Title II. *See* 604 F.3d at 1308. Interpreting

the statutory language at issue, the *Edison* court pointed out that the "defining characteristic of all [the entities listed in subsection (1)(B)] is that they are either traditional governmental units or created by one." *Id.* at 1310 (citing *Green v. New York*, 465 F.3d 65, 79 (2d Cir. 2006).[2] Therefore, the *Edison* court concluded the "the term 'instrumentality of a State' refers to governmental units or units created by them," *id.* at 1310, thus precluding Title II liability for a private corporation running a prison pursuant to a contract with the state. *See Medina v. Valdez*, 2011 WL 887553, at *4 (D. Idaho Mar. 10, 2011) (agreeing with the "*Green* court and with the *Edison* majority that the string of terms provided in the statute demonstrates that the statute was intended to include only state entities and instrumentalities created by the state"); *see also Tester v. Hurm*, 2011 WL 6056407, at *3 (E.D. Ky. Dec. 6, 2011) ("[T]hough CCA has contracted with a government entity to provide governmental prison services, that does not convert CCA into a 'public entity' for purposes of Title II.") (citations omitted); *Collazo v. Corrections Corporation of America*, 2011 WL 6012425, at *3 (N.D. Ohio Nov. 30, 2011) ("A private prison does not qualify as a department or agency of a state or local

---

[2]A dissenting opinion in *Edison* believed that the majority "conflate[d] government contracting with government function," and concluded that, because running a prison is "purely a government function," the private prison corporation was an "'instrumentality of a State' for purposes of Title II of the ADA." *Edison*, 604 F.3d at 1311 (Barkett, J., dissenting) (emphases omitted). Judge Barkett concluded that, "when a company takes the place of the state in performing a function within the exclusive province of the state, that company cannot be permitted to avoid the requirements of the law governing that state function." *Id.* at 1312. The statutory language, however, does not define "public entity" in terms of its function. *Cf. Medina v. Valdez*, 2011 WL 887553, at *3 n.1 (D. Idaho Mar. 10, 2011) ("Judge Barkett's dissent in *Edison* has an appealing ring of practicality to it; however, in the end, it is difficult to square with the plaint language of the statute."). As the Recommendation points out, "Congress may, at some future juncture, take up Judge Barkett's functional concerns by amending the ADA." Docket No. 306 at 18 (citing *Medina*, 2011 WL 887553, at *1-5).

4

government and therefore is not a 'public entity' under the statute.") (citations omitted); *Gonzalez-Jarquin v. Corrections Corporation of America*, 2008 WL 3285764, at *1 (S.D. Ga. Aug. 8, 2008) ("[B]ecause the CCA does not constitute a 'public entity' within the meaning of Title II, Plaintiff failed to state a viable Title II claim."); *Maringo v. Warden, Corrections Corporation of America*, 283 F. App'x 205, 205 (5th Cir. 2008) (per curiam).[3] For substantially the reasons outlined in the Recommendation, the Court agrees and, therefore, CCA is entitled to summary judgment on plaintiff's Title II claim.

As for plaintiff's Title III claim, that provision of the ADA affords only injunctive relief. 42 U.S.C. § 12188(a); *see Lewis v. Burger King*, 361 F. App'x 937, 938 n.1 (10th Cir. 2010) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004)); *see also Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III"). There is no indication that there is any ongoing violation of the ADA and, in any event, plaintiff is no longer incarcerated at a CCA facility. Consequently, there is no "live case or controversy," which "is a constitutional predicate to federal court jurisdiction," *Chambers v. Melmed*, 141 F. App'x 718, 720 (10th Cir. 2005) (concluding that Title III case was moot where conduct had ceased and there was no reason to believe it would recur), and the Court therefore must dismiss plaintiff's Title III claim for lack of jurisdiction.

Plaintiff's Eighth Amendment claim arises out of his treatment after having surgery on his ankle. Plaintiff contends that he should have been provided a

---

[3] *Cf. Maxwell v. South Bend Work Release Center*, 787 F. Supp. 2d 819, 821-22 (N.D. Ind. 2011); *Castle v. Eurofresh*, 734 F. Supp. 2d 938, 942-43 (D. Ariz. 2010).

wheelchair in order to receive food in his cell without having to slide it across the floor and for use in the shower in the absence of a handicapped shower where he could sit. Furthermore, plaintiff alleges that he was improperly prescribed ibuprofen and that defendants delayed examination of his ankle and improperly declined to remove a pin that had been inserted during the surgery.

"An Eighth Amendment claim has both an objective component – whether the deprivation is sufficiently serious – and a subjective component – whether the official acted with a sufficiently culpable state of mind." *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999). In this case, plaintiff must show both that he suffered a "sufficiently serious" harm (the objective element of a deliberate indifference claim) and that the prison official knew of and disregarded "an excessive risk" to the inmate's health (the subjective element). *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).

Plaintiff's evidence reveals nothing more than a disagreement over the nature and adequacy of the care he received, which is insufficient to support his claim. A "prisoner's right is to medical care – not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins*, 165 F.3d at 811. Rather, to establish deliberate indifference, there must be evidence of conduct which "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks

and citation omitted). Even assuming plaintiff was subjected to negligent medical care, "[a] negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins*, 165 F.3d at 811. Consequently, defendants Tiona and Gray are entitled to summary judgment on plaintiff's Eighth Amendment claim.[4]

For the foregoing reasons, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 306] is ACCEPTED. It is further

**ORDERED** that defendants' motion for summary judgment [Docket No. 255] is GRANTED. It is further

**ORDERED** that plaintiff's motion to strike [Docket No. 290] is DENIED. It is further

**ORDERED** that the trial preparation conference scheduled for February 24, 2012 and the trial scheduled to commence on March 5, 2012 are VACATED.

DATED February 13, 2012.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

---

[4] Plaintiff also objects to the Recommendation's inclusion of an assumption that he committed another crime in discussing the possible reason for his transfer into formal custody from community corrections. *See* Docket No. 306 at 2 n.2. However, plaintiff fails to explain how the magistrate judge's speculation on that point is material to any of the Recommendation's conclusions.